**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

AGinformationData, LLC,                                    Civil No. 11-3673 (DWF/JSM)

        Plaintiff,

v.                                                                              **MEMORANDUM**
                                                                                                                           **OPINION AND ORDER**
Integrated Solutions Group, Inc.;
AgTrax Technologies, Inc.; and
AgWorks, Inc.,

        Defendants.

_____

Lindsay J. Sokolowski, Esq., and Pamela Abbate-Dattilo, Esq., Fredrikson & Byron, PA, counsel for Plaintiff.

Jon R. Dedon, Esq., and Mark A. Olthoff, Esq., Polsinelli Shughart PC; Paul R. Dieseth, Esq., and Shannon L. Bjorklund, Esq., Dorsey & Whitney LLP, counsel for Defendants Integrated Solutions Group, Inc. and AgTrax Technologies, Inc.

Timothy W. Waldeck, Esq., Waldeck & Lind, counsel for Defendant AgWorks, Inc.

_____

**INTRODUCTION**

This matter is before the Court on Defendants Integrated Solutions Group, Inc. and AgTrax Technologies, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or in the Alternative, to Transfer Venue (Doc. No. 4). For the reasons set forth below, the Court denies the motion.

## BACKGROUND

Plaintiff AGinformationData, LLC ("Plaintiff") is a Minnesota corporation with its headquarters and principal place of business in Buffalo, Minnesota. (Doc. No. 1, Compl. ¶ 4.) Plaintiff develops technology products for agricultural businesses. (*Id.* ¶ 9.) Defendant Integrated Solutions Group, Inc., is a Kansas corporation with its principal place of business in Hutchinson, Kansas, which does business under the name of Defendant AgTrax Technologies, Inc. (together, "AgTrax"). (Doc. No. 13, Hobbs Decl. ¶ 2.) AgTrax "is a company that offers an array of software programs and complete systems designed specifically for grain elevators, fertilizer companies, full service cooperatives, ethanol production plants, feed stores, agronomy product and service providers, petroleum outlets, c-stores and other types of businesses in agriculture." (Compl. ¶ 13.) Defendant AgWorks, Inc. ("AgWorks") is an Iowa corporation with its headquarters and principal place of business in Iowa. (*Id.* ¶ 6; Doc. No. 10 at 2.) AgWorks also develops and sells software products to agricultural businesses, which allegedly compete with Plaintiff's products. (Compl. ¶ 12; Doc. No. 10 at 3.)[1]

On July 26, 2011, AgTrax contacted Plaintiff by way of Plaintiff's website, at which time AgTrax expressed an interest in Plaintiff's product and proposed a potential

---

[1]   AgWorks answered Plaintiff's complaint on January 23, 2012 (Doc. No. 10) and did not submit a written brief in response to AgTrax's motion. At the hearing, counsel for AgWorks stated that AgWorks takes no position with respect to dismissal, but opposes transfer to the District of Kansas.

partnership.[2] (Doc. No. 16, Fiebelkorn Aff. ¶ 4.) The initial contact generated a series of communications between Plaintiff and AgTrax via telephone and e-mail. (*Id.* ¶ 5.) Ultimately, the two companies decided to meet at AgTrax's headquarters in Kansas on August 8, 2011, in order for Plaintiff to present its products and business strategies to AgTrax's management. (*Id.* ¶ 6.) Prior to the August 2011 meeting, Plaintiff and AgTrax negotiated a Non-Disclosure Agreement (the "Agreement"). (Hobbs Decl. ¶ 21, Ex. A ("NDA").) Plaintiff drafted the Agreement in Minnesota, and the Agreement contains a Minnesota choice of law provision. (*See id.*; Fiebelkorn Aff. ¶¶ 7-10.) Kent Fiebelkorn, Chief Advocate-Owner of Plaintiff, signed the Agreement in Minnesota on Plaintiff's behalf on July 29, 2011, and sent the Agreement to AgTrax. (Fiebelkorn Aff. ¶ 8; NDA.) Gary Hobbs, President of AgTrax, signed the Agreement in Kansas on AgTrax's behalf on August 3, 2011. (Hobbs Decl. ¶ 20 & NDA.)

Plaintiff later brought this action alleging: (1) Breach of Non-Disclosure Agreement (Non-Disclosure Provision); (2) Breach of Non-Disclosure Agreement (Non-Use Provision); (3) Breach of Non-Disclosure Agreement (Non-Competition Provision); (4) Misappropriation of Confidential Information; and (5) Violation of the Minnesota Uniform Trade Secrets Act, against AgTrax; as well as (6) Tortious

---

[2] The message from AgTrax's Director of Marketing & Sales, Chuck Jenkins, to Plaintiff's owner, Kent Fiebelkorn, bears the subject line "potential alliance?" and states, in relevant part: "I would love to see more of the product, possibly have a conversation about your strategic alliance parameters and more- Please feel free to contact me at your convenience." (Fiebelkorn Aff. ¶ 23, Ex. A.)

Interference with Contract, against AgWorks; and (7) Unfair Competition; and (8) Unjust Enrichment, against all Defendants. (Compl. ¶¶ 51-103.)

Plaintiff alleges that the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), and that venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2). (Compl. ¶¶ 7, 8.) AgTrax now moves to dismiss the action for lack of personal jurisdiction or, in the alternative, to transfer the action to the United States District Court for the District of Kansas. (Doc. No. 4.)

## DISCUSSION

### I. Personal Jurisdiction

When a defendant challenges personal jurisdiction, the plaintiff has the burden to show that personal jurisdiction exists. *Burlington Indus., Inc. v. Maples Indus., Inc.,* 97 F.3d 1100, 1102 (8th Cir. 1996) (citing *Gould v. P.T. Krakatau Steel,* 957 F.2d 573, 575 (8th Cir. 1992)). To survive a motion to dismiss for lack of personal jurisdiction, however, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant. *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.,* 89 F.3d 519, 522 (8th Cir. 1996) (citing *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.,* 51 F.3d 1383, 1387 (8th Cir. 1995)).

When considering whether personal jurisdiction exists, a court may consider matters outside the pleadings; "the court may inquire, by affidavits or otherwise, into the facts as they exist." *Stevens v. Redwing,* 146 F.3d 538, 543 (8th Cir. 1998) (quoting *Land v. Dollar,* 330 U.S. 731, 735 n.4 (1947)). For the purposes of determining whether the plaintiff has made a prima facie showing of personal jurisdiction, the court must view the

evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor. *Digi-Tel,* 89 F.3d at 522 (citing *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir. 1991)).

In determining whether a court has personal jurisdiction over a non-resident defendant, a court must ordinarily satisfy both the requirements of the state long-arm statute and of federal due process. *Northrup King,* 51 F.3d at 1387. The Minnesota long-arm statute extends jurisdiction to the maximum limit consistent with due process, and therefore a court in Minnesota need only evaluate whether the requirements of due process are satisfied. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.,* 65 F.3d 1427, 1431 (8th Cir. 1995).

Federal due process requires that a defendant have "certain minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316 (1945) (internal quotations omitted). The defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). It is essential in each case that the defendant has purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)).

A court may use one of two different analyses to determine whether a defendant's contacts with the forum state establish personal jurisdiction.

5

*Corp.,* 327 F. 3d 642, 648 (8th Cir. 2003).  In a general jurisdiction case, a defendant maintains such "continuous and systematic" contacts with a state that it becomes subject to the jurisdiction of that state's courts for any purpose.  *Morris v. Barkbuster, Inc.,* 923 F.2d 1277, 1281 (8th Cir. 1991) (quoting *Helicopteros Nacionales de Columbia v. Hall,* 466 U.S. 408, 414 n.9, 416, 418-19 (1984)).  Specific jurisdiction, on the other hand, requires that the defendant has "purposely directed" its activities at residents of the forum and that the litigation results from alleged injuries that "arise out of or relate to" those activities.  *Wessels,* 65 F.3d at 1432 (quoting *Burger King,* 471 U.S. at 472).

Regardless of which analysis is used, the Eighth Circuit applies a five-factor test in determining whether the exercise of personal jurisdiction would pass constitutional muster:  (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of contacts; (3) the source and connection of the cause of action with those contacts; and, to a lesser degree, (4) the interest of the forum state; and (5) the convenience of the parties.  *Wessels*, 65 F.3d at 1432.  The first three factors are of primary importance, while the last two are "secondary factors."  *Minn. Mining & Mfg. Co. v. Nippon Carbide Indus. Co.,* 63 F.3d 694, 697 (8th Cir. 1995).  The third factor distinguishes between specific and general jurisdiction.  *Digi-Tel,* 89 F.3d at 523 n.4 (citing *Wessels*, 65 F.3d at 1432 n.4).

### A.   AgTrax's Contacts with Minnesota

AgTrax is a Kansas corporation with its principal place of business in Hutchinson, Kansas.  (Hobbs Decl. ¶ 2.)  AgTrax asserts that it is not registered to do business in Minnesota, it does not "actively advertise" in Minnesota, and it does not own or lease

6

property in Minnesota. (*Id.* ¶¶ 7, 8, 11.) AgTrax currently has no directors or officers in Minnesota, but acknowledges that it did have one employee in Minnesota at the time Plaintiff initiated this action. (*Id.* ¶¶ 5-6.)

Plaintiff contends that AgTrax maintains a website, on which it identifies the Minnesota Grain & Feed Association as a "strategic partner." (Doc. No. 17, Abbate-Dattilo Aff. ¶ 12, Ex. D.) Plaintiff further notes that AgTrax previously initiated a lawsuit against a Minnesota company, in which it admitted to supplying software and hardware to the company in Minnesota. (*Id.* ¶ 13, Ex. E at 2.) Plaintiff also observes that, during the litigation of that action, AgTrax acknowledged that it attended a trade show in Duluth, Minnesota. (*Id.* ¶ 14, Ex. F at 2.)[3]

Additionally, Plaintiff has submitted evidence that AgTrax first approached Plaintiff via Plaintiff's Minnesota-based website. (Fiebelkorn Aff. ¶ 4.) AgTrax initiated contact with Plaintiff in order to discuss forging a potential partnership between the companies. (*Id.*) Moreover, during the course of its dealings with Plaintiff prior to the August 8, 2011 meeting, AgTrax communicated with Plaintiff in Minnesota by phone

---

[3]   In addition to the information described above, the Affidavit of Pamela Abbate-Dattilo summarizes counsel's interaction with a former AgTrax employee, Mitch Coulter. (Abbate-Dattilo Aff. ¶¶ 1-7.) To the extent the affidavit pertains to counsel's interactions with Mr. Coulter, AgTrax has challenged the affidavit as improper. Without expressing an opinion as to the propriety or impropriety of counsel's affidavit, in rendering its decision on the present motion, the Court declines to rely on the Affidavit of Pamela Abbate-Dattilo insofar as it discusses information she claims to have learned from Mr. Coulter. (*See id.*)

and e-mail; some of those communications were directly related to the negotiation of the duration of the Agreement at the center of this litigation. (*Id.* ¶¶ 5-10.)

### B.  Personal Jurisdiction over AgTrax

Plaintiff asserts that both specific and general jurisdiction exist here. The Court first considers the nature, quality, and quantity of AgTrax's contacts with Minnesota. Based on the preceding description of the record, it is apparent that AgTrax itself reached out to Plaintiff, a Minnesota-based company, by way of Plaintiff's website; AgTrax made the initial contact in an effort to pursue a potential partnership with Plaintiff. AgTrax proceeded to engage Plaintiff in negotiations with respect to the prospective business relationship, whereby AgTrax communicated with Plaintiff via e-mail and telephone in Minnesota, and entered into the Agreement with Plaintiff. The Agreement, which is at the heart of the litigation here, was drafted and signed by Plaintiff in Minnesota, before AgTrax signed the Agreement in Kansas. (*See* NDA.) The Agreement itself memorializes a continuing (two-year) commitment by AgTrax to protect the proprietary information of Plaintiff, an entity based in Minnesota. (*Id.*)

The Court concludes that these contacts with Minnesota are not random, fortuitous, or attenuated. Instead, they demonstrate an intentional relationship between AgTrax and Plaintiff (a Minnesota company) as well as a concerted effort by AgTrax to initiate contact with Plaintiff in Minnesota. Such contacts should have given rise to a reasonable expectation that AgTrax could be haled into court in Minnesota. The Court therefore concludes that the nature, quality, and quantity of AgTrax's contacts with

Minnesota favor the exercise of personal jurisdiction over AgTrax. *See, e.g., Wessels*, 65 F.3d at 1433-34).[4]

There appears to be no dispute that AgTrax first initiated contact with Plaintiff via Plaintiff's Minnesota-based website. Subsequently, the parties negotiated the Agreement at issue in this lawsuit. In addition, the relationship between the parties involved numerous communications between AgTrax in Kansas and Plaintiff in Minnesota.

The Court also considers the relationship between the cause of action and AgTrax's contacts with Minnesota. Plaintiff alleges that AgTrax breached the Agreement it entered into with Plaintiff in a variety of ways. These claims directly relate to AgTrax's contacts with Minnesota. Plaintiff drafted the Agreement in Minnesota, negotiated changes to the Agreement from Minnesota, and signed the Agreement in Minnesota. Notably, the Agreement contains a Minnesota choice of law provision. Therefore, this factor supports the Court's exercise of jurisdiction over AgTrax.

In addition, the final two factors, which are accorded less weight in the Court's analysis, also support jurisdiction. Minnesota has an obvious interest in providing a forum in which Plaintiff, a Minnesota company, may litigate its claims. *See Northrup*,

---

[4] In further support of its argument against the Court's exercise of personal jurisdiction, AgTrax relies on the fact that, over the course of its relationship with Plaintiff, none of AgTrax's employees personally met with Plaintiff's representatives outside the State of Kansas. The absence of physical entry into Minnesota, however, is insufficient to permit AgTrax to avoid the Court's exercise of jurisdiction. *See Burger King*, 471 U.S. at 476 ("Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State."); *Bulk Process Equip. v. Earth Harvest Mills, Inc.*, Civil No. 10–4176, 2011 WL 1877836, at *4 n.2 (D. Minn. May 17, 2011).

51 F.3d at 1389.  In addition, the convenience of the parties favors jurisdiction.  A plaintiff is normally afforded its selected forum.  As discussed below with respect to the Court's analysis of the motion to transfer, some witnesses and evidence are located in Minnesota; other witnesses and evidence are located outside of Minnesota.  Any inconvenience to Defendants in litigating in Minnesota would be similarly experienced by Plaintiff if it were required to litigate elsewhere.  Notably, Defendant AgWorks has expressed a preference for litigating this action in this district and opposes transfer to the District of Kansas.

Based on the record before it, the Court concludes that Plaintiff has made a prima facie showing that AgTrax is subject to the specific jurisdiction of the Court.  The Court concludes that AgTrax purposefully directed its activities toward Minnesota and should have reasonably anticipated being haled into court in Minnesota in a dispute related to its relationship with Plaintiff with respect to the Agreement signed by the parties, particularly given that AgTrax actively sought Plaintiff out in Minnesota to pursue a potential partnership between the companies.  The Court recognizes that AgTrax's contacts with Minnesota may not rise very far above the minimum contacts necessary to establish jurisdiction.  The Court's task, however, is not to determine the "best" forum for a suit, but to determine whether sufficient minimum contacts exist so that a suit against AgTrax in Minnesota does not offend traditional notions of fair play

and substantial justice. Such contacts exist here. Therefore, the Court denies AgTrax's motion to dismiss.[5]

## II. Venue

AgTrax asserts that venue in this district is improper. Under 28 U.S.C. § 1391(a), venue in diversity cases is only appropriate in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). When a defendant seeks dismissal for improper venue, it bears the burden of demonstrating that the plaintiff's chosen venue is improper. *See United States v. Orshek*, 164 F.2d 741, 742 (8th Cir. 1947).

The Court concludes that venue is proper in this district under § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Minnesota. In particular, AgTrax sought out Plaintiff, a Minnesota-based company, by initiating e-mail contact with Plaintiff in Minnesota to discuss a potential partnership. Plaintiff communicated with AgTrax about, and negotiated the details of, the Agreement at issue in this case from Minnesota. Moreover, the Agreement itself was both drafted

---

[5] Because the Court has found that specific jurisdiction exists, the Court need not and does not reach the issue of whether the Court has general personal jurisdiction over AgTrax.

and signed by Plaintiff in Minnesota.  Based on these activities, the Court concludes that venue in the District of Minnesota is proper.[6]

### III.     Motion to Transfer

AgTrax also moves, in the alternative, to transfer this action to the District of Kansas pursuant to 28 U.S.C. § 1404(a).  That section provides:  "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  When deciding a motion to transfer pursuant to § 1404(a), the Court must consider the convenience of the parties, the convenience of the witnesses, and the interests of justice.  *See Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997).  In considering these factors, the Court must make a "case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors."  *Id*. The burden is on the party seeking the transfer "to show that the balance of factors 'strongly' favors the movant."  *Graff v. Qwest Commc'ns Corp.*, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999).  Here, there is no dispute that this case "might have been brought" in Kansas.  The Court therefore considers the relevant transfer factors.

"[S]ection 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient, and a transfer should not be

---

[6]     AgTrax argues that a substantial part of the events or omissions giving rise to the claim occurred in Kansas.  Section 1391(a)(2), however, does not require that there be a single appropriate district for venue, but instead allows for proper venue in more than one district.  *See, e.g.*, *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995).

granted if the effect is simply to shift the inconvenience to the party resisting the transfer." *Id*. Normally, there is a presumption in favor of the plaintiff's forum. *Id*. AgTrax advocates for transfer, claiming that Minnesota is only convenient for Plaintiff, while Kansas is the location of the subject matter of this action. Plaintiff, however, asserts that Minnesota is not an inconvenient forum, especially in light of the geographical proximity of Defendant AgWorks in Iowa, and Minnesota. The Court finds that the convenience of the parties weighs in favor of maintaining this action in Minnesota because transfer to Kansas would simply shift the inconvenience to Plaintiff, and likely to AgWorks as well.

The convenience of witnesses is an important factor for the Court and the parties because it affects the access to sources of proof. *Id*. at 1121. In considering the convenience of witnesses, courts have focused on the number of non-party witnesses, the location of all witnesses, and the preference of courts for live testimony as opposed to depositions. *See id*. AgTrax argues that this factor weighs in favor of transfer because most, if not all, AgTrax witnesses reside in Kansas. (*See* Hobbs Decl. ¶ 12.) In addition, AgTrax argues that Kansas would afford greater accessibility to AgTrax records and documents. (*Id.* ¶ 13.)

The Court notes that it appears likely that fact witnesses will reside in both Minnesota and Kansas. In addition, the location of records and documents does not materially impact the convenience analysis in this case. Thus, the convenience of the witnesses does not weigh in favor of transferring this action to the District of Kansas.

The Court must also evaluate what venue will best promote the interests of justice. *Graff*, 33 F. Supp. 2d at 1122. This factor is weighed "very heavily." *Id.* A number of relevant considerations include judicial economy, the plaintiff's choice of forum, the costs of litigating in each forum, obstacles to a fair trial, choice of law issues, and the advantages of having a local court determine questions of local law. *See Terra Int'l*, 199 F.3d at 696. AgTrax argues that the interests of justice weigh in favor of transfer. In particular AgTrax claims that Plaintiff's choice of forum should be given less weight here because the operative events giving rise to the lawsuit occurred in Kansas, and any wrongful conduct by AgTrax occurred in either Kansas or Iowa.

As the Court has already explained, a substantial part of the events or omissions giving rise to the claims in this action occurred in Minnesota. Therefore, the Court recognizes the interest in protecting Plaintiff's choice of forum. In addition, as explained above, Minnesota has an interest in providing a forum for Plaintiff. On balance, the Court concludes that maintaining the action here would promote the interests of justice, and the Court finds that this factor does not weigh in favor of transferring this action to the District of Kansas.

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** that Defendants Integrated Solutions Group, Inc., and AgTrax Technologies, Inc.'s, Motion to Dismiss for

Lack of Personal Jurisdiction and Improper Venue, or in the Alternative, to Transfer Venue (Doc. No. [4]) is **DENIED**.

Dated:  April 30, 2012            s/Donovan W. Frank
                                  DONOVAN W. FRANK
                                  United States District Judge