# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

AgInformationData, LLC,                                    Civil No. 11-3673 (DWF/JSM)

               Plaintiff,

v.                                                          **AMENDED MEMORANDUM
                                                            OPINION AND ORDER**

Integrated Solutions Group, Inc.;
AgTrax Technologies, Inc.; AgWorks,
Inc.; and AgWorks, LLC,

               Defendants.

---

Lindsay J. Sokolowski, Esq., Pamela Abbate-Datilo, Esq., and Ted C. Koshiol, Esq,
Fredrikson & Byron, PA, counsel for Plaintiff.

Jon R. Dedon, Esq. and Mark A. Olthoff, Esq., Polsinelli Shughart PC; and Paul R.
Dieseth, Esq., Anne M. Trimberger, Esq., and Shannon L. Bjorklund, Esq., Dorsey &
Whitney LLP, counsel for Defendants Integrated Solutions Group, Inc. and AgTrax
Technologies, Inc.

Peter M. Waldeck, Esq. and Timothy W. Waldeck, Esq., Waldeck Law Firm PA, counsel
for Defendants AgWorks, Inc. and AgWorks, LLC.

---

## INTRODUCTION

The Court hereby amends its September 2, 2014 Order (Doc. No. 152). This

Amended Memorandum Opinion and Order is the same as Doc. No. 152, except that the

Court corrects a typographical error in the Order section at paragraphs 1 and 2.

This matter is before the Court on the following cross-motions for summary

judgment: AgWorks, Inc. and AgWorks, LLC's (together, "AgWorks") Motion for

Summary Judgment (Doc. No. 100); Integrated Solutions Group, Inc. and AgTrax

Technologies, Inc.'s (together, "AgTrax")[1] Motion for Summary Judgment (Doc.
No. 107); and AgInformationData, LLC's ("Plaintiff" or "AgInfo") Motion for Partial
Summary Judgment (Doc. No. 122).  For the reasons set forth below, the Court grants in
part and denies in part the motions.

## BACKGROUND

Plaintiff is a two-person Minnesota company that creates technology products for
agriculture, including software products that help agricultural companies with the "on the
ground" aspects of their work, such as tracking trucks, managing a warehouse, and
ensuring regulatory compliance.  (Doc. No. 126 ("Abbate-Dattilo Aff.") ¶ 25, Ex. X
("Fiebelkorn Dep.") at 5-6; Abbate-Dattilo Aff. ¶ 2, Ex A ("Fiebelkorn Aff.") at ¶ 3.)
Kent Fiebelkorn ("Fiebelkorn") is the President and owner of AgInfo.  (Fiebelkorn Dep.
at 6.)  Plaintiff invented trax360, which is one of Plaintiff's agriculture-related software
products.[2]  (*Id.* at 126, 273.)  The trax360 is a technology package that allows distributors
and agricultural retailers to label and track bulk or mobile assets with barcode labels and
scanning equipment, and, particularly, to do so in a way that addresses Environmental
Protection Agency ("EPA") regulations that took effect in 2011.  (*Id*. at 126.)  Plaintiff
began selling the trax360 in 2010.  (*Id.* at 175, 268.)  The trax360 has subscription-based
pricing and is internet or "cloud"-based to receive and transmit data in real time (known
as "Solution as a Service"-based or "SaaS"-based).  (*Id.* at 157-58, 261.)

---

[1]     AgWorks, Inc.; AgWorks, LLC; Integrated Solutions Group, Inc.; and AgTrax
Technologies, Inc. are collectively referred to as "Defendants."

[2]     AgInfo also invented and sells the Optimus360 and Fleet360 systems, but trax360
is the primary technology at issue in this litigation.

AgWorks, Inc. was an Iowa-based company that was a competitor of Plaintiff before it was sold.  (Abbate-Dattilo Aff. ¶ 24, Ex. W ("Duhachek Dep.") at 56.) AgWorks, Inc. created agriculture-related software products for agribusiness retailers. (*See id.* at 50, 56.)  AgWorks, LLC purchased AgWorks, Inc. on January 17, 2012, and AgWorks, LLC continues to offer AgWorks, Inc.'s products.  (Abbate-Dattilo Aff. ¶ 21, Ex. T.)  AgWorks offers the AgTankTracker, which assists customers in complying with EPA regulations and allows customers to track the activities related to cleaning, filling, and moving mini-bulk chemical tanks.  (Duhachek Dep. at 50.)  AgWorks began developing the AgTankTracker in 2009.  (*Id.*)  AgWorks made the AgTankTracker available for beta purchase for the first time in 2010, with its first official sale in early 2011.  (*Id.* at 46.)  The AgTankTracker utilizes a subscription-based payment system, a barcode labeling system to help identify assets, and a barcode scanner to transfer information to the system itself.  (*Id.* at 41, 43-45, 147-48.)  AgWorks asserts that the AgTankTracker has functioned in largely the same way since beta testing.  (Doc. No. 103 ("Waldeck Aff.") ¶ 5, Ex. 4 ("Hull Dep.") at 40-41.)  Charles Jenkins, Director of Sales and Marketing for AgTrax, states that the subscription pricing system began "about the time the ownership [of AgWorks] changed hands," in January of 2012. (Waldeck Aff. ¶ 4, Ex. 3 ("Jenkins Dep.") at 112.)

AgTrax Technologies, Inc. is an agribusiness software solution company located in Hutchinson, Kansas, and is a division of Defendant Integrated Solutions Group, Inc. (d/b/a AgTrax Technologies).  (Waldeck Aff. ¶ 6, Ex. 5 ("Hobbs Dep.") at 13-15.)

In 2011, AgTrax began searching for a partner who developed agriculture-related software solutions such as the AgTankTracker and trax360 to meet client needs and to address the upcoming 2011 EPA regulatory changes. (Jenkins Dep. at 24-26, 33-35, 139-48.) AgTrax did not have the capacity to develop such products in-house. (*Id.* at 148.) Jenkins was in charge of finding such a partner. (*Id.* 24-25, 34.)

AgTrax reached out to Plaintiff and AgWorks, among others, seeking information about their products. (*Id.* at 36.) AgTrax met with AgWorks between June and September of 2011. (*Id.* at 54.) AgWorks demonstrated their products to AgTrax, highlighting the AgTankTracker via an online meeting titled "AgTankTracker Meeting" with AgTrax executives on July 29, 2011. (*Id.* at 63-68.) Plaintiff presented its products at AgTrax headquarters on August 8, 2011. (Fiebelkorn Dep. at 28.)

Before the August 8, 2011 meeting, Plaintiff presented AgTrax with a Non-Disclosure Agreement ("NDA") relating to the protection of confidential and proprietary information. (Abbate-Dattilo Aff. ¶ 7, Ex. F.) Jenkins e-mailed Fiebelkorn stating that AgTrax would sign the NDA if the length of time was changed from three years to two years. (Abbate-Dattilo Aff. ¶ 8, Ex. G.) AgTrax President Gary Hobbs signed the NDA on behalf of AgTrax on August 3, 2011 and Fiebelkorn signed the NDA for Plaintiff ("AgTrax-AgInfo NDA"). (Abbate-Dattilo Aff. ¶ 7, Ex. F.)

At the August 8, 2011 meeting, Plaintiff presented its products and business plans over a two- to four-hour period to seven AgTrax employees, including the Director of Marketing and Sales, the Director of Operations, the Director of Development, the Director of Quality Control, the Director of Customer Services, and Jenkins. (Jenkins

Dep. ¶ 159.)  Hobbs states he was present at the meeting for approximately forty-five

minutes.  (Hobbs Dep. at 58-59.)  Fiebelkorn presented a PowerPoint and presented

specifically on details associated with trax360, including information about its chemical

calculator, barcode capabilities, selling strategy, product development in tandem with the

EPA, and subscription-based pricing.  (Abbate-Dattilo Aff. ¶ 6, Ex. E.)

    After the meeting, Fiebelkorn claims that he and Jenkins held an extended private

meeting discussing the presentation in greater detail and discussing Fiebelkorn's business

strategies.  (Fiebelkorn Dep. at 41.)  Fiebelkorn testifies that Jenkins asked a number of

questions about reselling Plaintiff's products and about Plaintiff's pricing strategies.  (*Id.*

at 14-16, 41-43; Abbate-Dattilo Aff. ¶ 9, Ex. H.)  Jenkins denies that such a meeting took

place.  (Jenkins Dep. at 169.)  Fiebelkorn also asserts that Jenkins asked Fiebelkorn if the

company was for sale, and Fiebelkorn stated that it was not.  (*Id.* at 170.)  AgTrax

informed Plaintiff that it was considering buying other companies at that time.

(Fiebelkorn Dep. at 16.)

    On August 9, 2011, AgTrax signed an NDA with AgWorks ("Defendants' NDA").

Defendants' NDA was the same as the AgInfo-AgTrax NDA, except for the names of the

parties and the governing law.  (Abbate-Dattilo Aff. ¶ 11, Ex. J.)  The parties dispute who

drafted Defendants' NDA.  Hobbs asserts that AgWorks drafted Defendants' NDA and

AgWorks asserts that they did not.  (Hobbs Dep. at 37; Abbate-Dattilo Aff. ¶ 13, Ex. L.)

Plaintiff contends that AgTrax used the Plaintiff-drafted AgTrax-AgInfo NDA.

    Plaintiff and AgTrax did not communicate after the August 8, 2011 meeting.

Fiebelkorn attempted to call Jenkins a few days after the meeting, and hearing no

response, e-mailed Jenkins on August 25, 2011.  (Fiebelkorn Dep. at 72-75;

Abbate-Dattilo Aff. ¶ 10, Ex. I.)  Fiebelkorn again received no response to his e-mail.

(*Id*.)

On October 12, 2011, AgTrax issued a press release stating that it was entering

into a marketing agreement with AgWorks.  (Abbate-Dattilo Aff. ¶ 3, Ex. B.)  AgTrax

and AgWorks entered into two separate marketing agreements.  (Waldeck Aff. ¶ 3, Ex. 2

("Martin Dep.") at 100.)  Defendants entered into the first marking agreement on

September 16, 2011, which allows AgTrax to collect a commission on AgWorks's sales

of the AgTankTracker to AgTrax customers ("Agreement 1").  (Abbate-Dattilo Aff. ¶ 16,

Ex. O.)  AgWorks and AgTrax entered into a second marketing agreement in

February 2012 ("Agreement 2"), which was substantially similar to Agreement 1, but

included different pricing.  (Abbate-Dattilo Aff. ¶ 20, Ex. S.)

In its Amended Complaint, Plaintiff asserts the following claims:  (1) Breach of

NDA (Non-Disclosure Provision) against AgTrax; (2) Breach of NDA (Non-Use

Provision) against AgTrax; (3) Breach of NDA (Non-Competition Provision) against

AgTrax; (4) Misappropriation against AgTrax; (5) Violations of the Minnesota Uniform

Trade Secrets Act ("MUTSA") against AgTrax; (6) Tortious Interference with Contract

against AgWorks; (7) Unfair Competition against all Defendants; and (8) Unjust

Enrichment against all Defendants.  (Doc. No. 51 ¶¶ 57-110.)

AgTrax seeks summary judgment on all claims against it—Counts One through

Five, Seven and Eight.  (Doc. No. 107.)  AgWorks seeks summary judgment on all

claims against it—Counts Six through Eight.  (Doc. No. 100.)  Plaintiff also seeks partial

summary judgment, but solely on Counts Three, Six, and Seven, and argues that genuine issues of material fact exist with respect to the remaining Counts.  (*See* Doc. No. 122.)

## DISCUSSION

## I.    Legal Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Enter. Bank*, 92 F.3d at 747.  The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.    Breach of NDA (Non-Disclosure Provision) against AgTrax and Breach of NDA (Non-Use Provision) against AgTrax

To state a claim for breach of contract, a plaintiff must establish:  (1) formation of a contract; (2) performance of conditions precedent by the plaintiff; and (3) breach by the defendant.  *See Thomas B. Olson & Assoc., P.A. v. Leffert, Jay & Polglaze, P.A.*, 756 N.W.2d 907, 918 (Minn. Ct. App. 2008) (citations omitted).

Under Minnesota law, a contract is to be interpreted in a manner that gives meaning to all of its provisions.  *Advantage Consulting Grp., Ltd. v. ADT Sec. Sys., Inc.*, 306 F.3d 582, 585 (8th Cir. 2002) (quotation and citations omitted).  The overall purpose of the contract must be considered.  *Id.*  The Court should not construe terms of the agreement so as to lead to a harsh or absurd result.  *Id.*; *see also M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 878 (8th Cir. 2010).  Under Minnesota law, a contract is ambiguous if the language of the contract is reasonably susceptible to more than one meaning.  *Brookfield Trade Ctr. v. Cnty. of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998).

The contract at issue in this case is the AgTrax-AgInfo NDA that the parties signed to "further their discussion of various business matters" by protecting anticipated disclosure of any "confidential, proprietary or trade secret information to each other." (Doc. No. 51-1 ("AgTrax-AgInfo NDA") ¶ 1.)  Specifically, the NDA requires the following:

> **2.    Nondisclosure of Proprietary Information**.  The Receiving Party agrees  (i) **to hold the Disclosing Party's Proprietary Information in confidence** and to take all necessary precautions to protect such Proprietary Information including, without limitation, all precautions the Receiving

Party employs with respect to its own confidential materials, but in no event less than reasonable precautions (ii) **not to disclose, provide or make available any such Proprietary Information** or any information derived therefrom to any third person, (iii) **not to make any use of such Proprietary Information**, except for the evaluation contemplated by this Agreement. . . .   The obligations of non-use and non-disclosure set forth in this Agreement shall survive for a period of two (2) years from the date of disclosure of the Proprietary Information.

   **3.     Exception to the Restrictions on Use and Disclosure.**  The Disclosing Party agrees that the restrictions on disclosure and use set forth in this Agreement shall not apply with respect to information that (i) is in the public domain at the time it is disclosed or becomes part of the public domain after disclosure without Receiving Party's breach of any obligation owed to Disclosing Party, (ii) was in the possession of the Receiving Party or known by it[] prior to receipt from the Disclosing Party, (iii) was rightfully disclosed to the Receiving Party by a third party without restriction, (iv) was independently developed by the Receiving Party without access to such Proprietary Information, (v) was disclosed to a third party by the Disclosing Party without restrictions on disclosure and use similar to those found in this Agreement or (vi) is required to be disclosed pursuant to any statutory or regulatory authority or court order, provided the Receiving Party has given the Disclosing Party prompt notice of such requirement and the opportunity to contest it.

(AgTrax-AgInfo NDA ¶¶ 2-3 (emphasis added).)  Thus, the NDA restricts the parties'

*disclosure* and *use* of any confidential and proprietary information transmitted between

them.

   The parties do not argue that the contract is ambiguous with respect to the use and

disclosure requirements.  Instead, AgTrax argues that Plaintiff failed to meet the

requirements for properly designating information as confidential or proprietary, and for

reducing that information to writing as outlined in the NDA and that, therefore, there are

no disclosures protected by the NDA.  Plaintiff, however, argues that it had 180 days

under the NDA to document its disclosed confidential and proprietary information.

Plaintiff argues that because AgTrax materially breached the NDA before they could reduce orally-disclosed proprietary information to writing, Plaintiff was no longer under any obligation to do so.  The parties agree that Plaintiff did not give confidential tangible documents to AgTrax; therefore only the requirement that oral disclosures be reduced to writing is in dispute.

The relevant portion of the NDA for designating confidential or proprietary information provides:

> All Proprietary Information disclosed in tangible form by the Disclosing Party shall be marked "confidential," "proprietary" or in some similar fashion to indicate its special status. All Proprietary Information disclosed orally shall be designated as confidential or proprietary at the time of disclosure and shall be reduced to writing and delivered to the Receiving Party within non limited and will remain open ended, until one party has notified another by a written document, and upon notice all articles will be documented within (180) days following the date of notice disclosure.

(AgTrax-AgInfo NDA ¶ 1.)

First, the Court concludes that the NDA is unambiguous to the extent it provides a 180-day period to comply.[3]  Second, given this 180-day period, the Court concludes that Plaintiff has presented sufficient evidence to create a genuine issue of fact regarding whether it properly orally disclosed and identified the information that was confidential. Plaintiff presents testimony that Fiebelkorn made clear at the presentation that all of the information being disclosed was confidential and proprietary.  The information disclosed included Plaintiff's information related to selling strategies; strategies for collaborating

---

[3]    Any ambiguity in the provision's language that reads, "within non limited and will remain open ended," does not affect the Court's determination that the language regarding the 180-day window is unambiguous.

with the EPA; information about Plaintiff's chemical calculator; information about Plaintiff's marketing strategies; information about software coding associated with the trax360; information gathered as a part of Plaintiff's market research efforts; custom reporting capabilities in Plaintiff's software; and information about trax360's capabilities. (*See* Doc. No. 125 at 26.) This information meets the NDA's definition of "Proprietary Information." [4] Further, the requirement that the parties sign the NDA further supports this view that information was identified as confidential or proprietary.

With respect to the "reduction to writing" requirement, AgTrax's argument also fails. As Plaintiff argues, it is "[a] rule in the law of contracts that a party cannot raise to its advantage a breach of contract against another party when it has first breached the contract itself." *See, e.g.*, *MTS Co. v. Taiga Corp.*, 365 N.W.2d 321, 327 (Minn. Ct. App. 1985). Therefore, here, because Plaintiff alleges AgTrax breached the NDA, AgTrax's arguments that Plaintiff breached the NDA fail. Plaintiff had no obligation to undertake further actions pursuant to the NDA once it learned that AgTrax was contracting with AgWorks, and once it believed that AgTrax had materially breached their NDA. Even if this was not the case, Plaintiff provided a PowerPoint presentation that reduced the information conveyed to writing, which at least creates a fact question for a jury. Thus, AgTrax's argument that Plaintiff's disclosures were not protected

---

[4] The NDA defines confidential, proprietary, or trade secret information as follows: "'Proprietary Information' means any information disclosed by one party ("Disclosing Party') to the other Party, ('Receiving Party'), including, without limitation business records and files, manuals, software, financial data, budgetary information, income and sales data or projections, customers lists, facilities, suppliers, designs, plans, techniques, processes, formulas, drawings, concepts, developments, experiments, and market analyses." (NDA ¶ 1.)

because they were not reduced to writing per the agreement fails, and AgTrax is not entitled to summary judgment on these counts on this basis.

AgTrax, however, argues that even if confidential and proprietary information was properly disclosed per the NDA, AgTrax did not breach the non-use and non-disclosure provisions and Plaintiff fails to present any evidence of use or disclosure in violation of the NDA. Specifically, AgTrax argues that there is no evidence that AgTrax either disclosed Plaintiff's information to anyone or used any of Plaintiff's information in any way. The Court disagrees.

Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that Plaintiff presents evidence that could allow a reasonable jury to conclude that AgTrax both disclosed and used Plaintiff's confidential information. Although Plaintiff's evidence is admittedly sparse, Plaintiff specifically presents evidence that AgTrax's representative, Jenkins, sought detailed information on Plaintiff's pricing strategy after their August meeting, thereby showing AgTrax was interested in learning about Plaintiff's confidential pricing strategies. AgTrax and AgWorks then entered into a NDA the day after AgTrax and Plaintiff's meeting and after AgTrax had learned about Plaintiff's product and strategies. Defendants' NDA was identical to the AgTrax AgInfo NDA except for the choice of law provision and the named parties. Plaintiff also presents Defendants' sales records that reflect a shift in Defendant's pricing models to models that are similar to those of Plaintiff. Finally, Plaintiff presents evidence of changes to Defendants' website, reflecting use of Plaintiff's information. To the extent AgTrax

argues that the information was public and, therefore, could not be improperly used or

disclosed, the Court disagrees and fully addresses this issue below in Section V.

Thus, Plaintiff has presented questions of fact that are properly considered by a

jury, and AgTrax's motion for summary judgment with respect to Counts I and II is

denied.[5]

### III.   Breach of NDA (Non-Competition Provision) against AgTrax

AgTrax and Plaintiff both seek summary judgment on Count III alleging

violations of the non-compete provision of the NDA.  The relevant language of the NDA

("Paragraph 6") provides:

> **6.  Acknowledgment of Disclosing Party.**  The Disclosing Party
> understands and agrees that the Receiving Party **may not**, currently or in
> the future, be developing information internally, or receiving information
> from third parties, which may be similar to the Disclosing Party's
> Proprietary Information.  This Agreement shall be construed as a
> representation or inference that the Receiving Party **will not** develop
> products, strategies or plans, for itself or others, which compete with the
> products, strategies or plans contemplated by the Disclosing Party's
> Proprietary Information.

(AgTrax-AgInfo NDA ¶ 6) (emphasis in original).

Under Minnesota law, restrictive covenants are to be strictly construed because

they are agreements in restraint of trade, but they will be enforced to the extent that they

protect a legitimate business interest and are supported by consideration.  *See Prow v.*

*Medtronic, Inc.*, 770 F.2d 117, 120 (8th Cir. 1985); *Medtronic, Inc. v. Gibbons*, 684 F.2d

---

[5]     Although Plaintiff's claim can survive summary judgment on the facts presented,
the Court notes that Plaintiff will still have to establish at trial that the information it has
identified as "confidential, proprietary or trade secret information" was in fact
contemplated as such under the NDA.

565, 568 (8th Cir. 1982); *Kallok v. Medtronic*, 573 N.W.2d 356, 361 (Minn. 1998) (to be

enforceable non-compete agreements must serve a legitimate business interest and must

be no broader than reasonably necessary to protect this interest); *Life Time Fitness*, *Inc. v.

DeCelles*, 854 F. Supp. 2d 690, 696 (D. Minn. 2012).  The covenant must be reasonable

under all of the circumstances, and to determine the reasonableness of a non-compete

agreement, the Court considers:  (1) whether the restraint is necessary for the protection

of the business or goodwill of a company; (2) whether the restraint is greater than

necessary to adequately protect a company's legitimate interests; (3) how long the

restriction lasts; and (4) the geographic scope of the restriction.  *See Prow*, 770 F.2d at

120 (citing *Bennett v. Storz Broad. Co.*, 134 N.W.2d 892, 899-900 (1965)).  Minnesota

courts apply a "more lenient" standard when considering non-compete covenants

between businesses than between an employer and employee.  *See Ikon Office Solutions

v. Dale*, 22 Fed. Appx. 647, 649 (8th Cir. 2001).

Plaintiff asserts that Provision 6 is unambiguous and that the Court should grant

summary judgment in favor of Plaintiff.  Plaintiff argues that Provision 6 clearly provides

that AgTrax:  (1) may not develop products, strategies, or plans that compete with the

products, strategies, or plans contemplated by the information disclosed to AgTrax by

AgInfo during the parties' business discussions; and (2) may not develop information or

receive information similar to the information disclosed by AgInfo during the parties'

discussions.  Plaintiff asserts that AgTrax violated those provisions when they began their

business relationship with AgWorks and began selling products that directly competed

14

with AgInfo's trax360.  Finally, Plaintiff argues that Provision 6 is reasonable and thus is enforceable.

Defendants, however, argue that the NDA's Non-Compete Provision "fails to satisfy the most basic Minnesota legal requirements" because it is lacking temporal and geographic restrictions.  (*See* Doc. No. 109.)  Defendants further argue that even if the Court finds that the lack of these restrictions fails to render Paragraph 6 unenforceable, it is clear that the principal purpose of the entire NDA was to limit disclosure and use of confidential or proprietary information, and that construing Provision 6 to prohibit all competition would be an "absurd" result.  Finally, Defendants argue that the Non-Compete Provision of the NDA is not supported by adequate consideration.  The Court agrees that the provision is unenforceable.

Non-use and non-disclosure provisions can be necessary to protect a business's confidential or proprietary information.  *See, e.g.*, *Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 742 F.3d 845, 848-51 (8th Cir. 2014).  Here, Plaintiff undoubtedly has a legitimate business interest in protecting any actually confidential and proprietary data and in protecting the resources it expended in developing and producing trax360.  *See, e.g.*, *Alside v. Larson*, 220 N.W.2d 274, 280 (Minn. 1974) (finding enforceable a covenant protecting certain information relating to business operations).  This interest, however, is fully protected by the NDA's provisions on non-use and non-disclosure.  Certainly under a plain reading of the non-use and non-disclosure provisions (AgTrax-AgWorks NDA ¶¶ 1-3), AgTrax cannot develop a product based on the confidential and proprietary information that it learned from Plaintiff.  In addition,

AgTrax cannot give this information to a third party and cannot have a third party use it to develop a competitive product.

However, the Court concludes that Provision 6 goes much further and reaches beyond the overall purpose of the agreement. *See Advantage Consulting*, 306 F.3d at 585 (holding that a contract is to be interpreted so as to give meaning to all of its provisions). Specifically, to the extent Provision 6 bars AgTrax from seeking out a competitor before the parties had even formed a business relationship, it goes too far and is greater than "reasonably necessary" to adequately protect a company's "legitimate business interests." *Prow*, 770 F.2d at 120. In this case, the parties had no business relationship. Instead, the parties met a single time and during that meeting Plaintiff pitched its business and its products to AgTrax. Even those cases cited by Plaintiff in support of the view that the provision is enforceable involved parties with some degree of meaningful business relationship. *See, e.g.*, *Porous Media Corp. v. Midland Brake, Inc.*, 220 F.3d 954 (8th Cir. 2000) (upholding a jury finding that enforced an exclusive agreement between two companies that had done business with each other for years and that had an agreement relating to their ongoing manufacturer-supplier relationship). Plaintiff can protect the disclosure and use of confidential and proprietary information presented during a meeting like the meeting at issue (*see* Provisions 1 and 2 of the NDA), but cannot stop AgTrax from choosing to do business with any competitors prior to the establishment of a business relationship. As AgTrax argues, the provision, as it currently exists, would lead to an unreasonably harsh and absurd result and would make no business sense. *See M.M. Silta, Inc.*, 616 F.3d at 878 (holding that the contract was unenforceable because it was

16

difficult for the court "to imagine why a party would willingly subject itself to such an open-ended liability over an uncertain business endeavor"). Like the court in *M.M. Silta*, the Court here cannot accept a contract provision that would preclude parties from considering information about a company and its products prior to forming a serious business relationship. *See id.* The fact that the legal standard for evaluating non-compete agreements between businesses is "more lenient" in Minnesota than the stricter standard to evaluate employer-employee covenants not to compete does not save Plaintiff's claim here. *See Ikon Office Solutions v. Dale*, 22 Fed. Appx. 647, 649 (8th Cir. 2001); *Hypred S.A. v. Pochard*, Civ. No. 04-2773, 2004 WL 1386149, at *2 (D. Minn. June 18, 2004) (citing *Bess v. Bothman*, 257 N.W.2d 791, 795 (Minn. 1977)). Under any view, this provision prohibiting AgTrax from choosing its business partners and exploring various companies and their products is not a reasonable restriction and is therefore unenforceable. *Berg v. Miller*, Civ. No. 04-1188, 2005 WL 832064, at *5 (Minn. Ct. App. Apr. 12, 2005) (stating that while the courts recognize a distinction with respect to covenants involving businesses, "the test is still whether the non-compete provision is reasonable"); s*ee also Prow*, 770 F.2d at 120 (holding that the covenant must be reasonable under all the circumstances).[6]

Thus, the Court grants AgTrax's motion for summary judgment and denies Plaintiff's motion and dismisses Count III with prejudice.

---

[6]     The Court need not determine whether Provision 6's lack of geographical and temporal restrictions are fatal to the enforceability of the NDA because, even assuming they were not problematic to Provision 6, the Court still concludes that Provision 6 is unenforceable as unreasonable. For the same reason, the Court need not consider whether there was adequate consideration.

## V.      Misappropriation against AgTrax

AgInfo asserts a claim for misappropriation of confidential information against AgTrax (Count IV).  Defendants argue that this is a common-law claim that is displaced by Plaintiff's statutory claim under MUTSA (Count V).  The Court agrees.

The law in Minnesota is clear that MUTSA "displace[s] conflicting tort, restitutionary, and other law in this state providing civil remedies for misappropriation of a trade secret."  Minn. Stat. § 325C.07(a).  This displacement does not extend to civil remedies that are not based on misappropriation of trade secrets.  *Id.*  Thus, "only common-law claims directly based on trade secrets conflict with the MUTSA and are displaced."  *CHS Inc. v. PetroNet, LLC*, Civ. No. 10-94, 2011 WL 1885465, at *11 (D. Minn. May 18, 2011) (citing *Micro Display Sys., Inc. v. Axtel, Inc.*, 699 F. Supp. 202, 204-05 (D. Minn. 1998)).

Here, there is no dispute that Plaintiff's misappropriation claim is based on the same factual allegations underlying Plaintiff's MUTSA claim.  *See PetroNet*, 2011 WL 1885465, at *11 (holding that there was no information in the record that was claimed as confidential by Plaintiff but was not claimed to be a trade secret, and the success or failure of the claim depended on its grounding in trade secrets).  Therefore, the Court concludes that in this case, MUTSA displaces the misappropriation claim.  The Court thus grants AgTrax's motion for summary judgment on Count IV and dismisses Count IV with prejudice. [7]

---

[7]   Plaintiff does not address Defendant's arguments with respect to this issue.

**VI.     Violations of the Minnesota Uniform Trade Secrets Act against AgTrax**

AgTrax seeks summary judgment on Plaintiff's claim that it violated MUTSA.

MUTSA requires a person "seeking protection to show both the existence and the

misappropriation of a trade secret." *Internet Inc. v. Tensar Polytechnologies, Inc.*, Civ.

No. 05-317, 2005 WL 2453170, at *8 (D. Minn. Oct. 3, 2005) (quoting *Electro-Craft

Corp. v. Controlled Motion, Inc.*, 332 N.W.2d 890, 897 (Minn. 1983)).  Courts interpret

this to mean that "[w]ithout a proven trade secret there can be no action for

misappropriation, even if defendants' actions were wrongful." *Electro-Craft*, 332

N.W.2d at 897.

To establish that a particular item is a "trade secret" under MUTSA, a plaintiff

bears the burden of proving that:  (1) the information was not generally known or readily

ascertainable; (2) the information derived independent economic value from secrecy; and

(3) it made reasonable efforts to maintain the information's secrecy.  *Tensar*, 2005 WL

2453170, at *8 (citing *NewLeaf Designs, LLC v. BestBins Corp.*, 168 F. Supp. 2d 1039,

1043 (D. Minn. 2001); *Lexis-Nexis v. Beer*, 41 F. Supp. 2d 950, 958 (D. Minn. 1999)).[8]

A trade secret can be misappropriated through two means, but relevant to this

case, a party can be liable for misappropriation by:

> [D]isclosure or use of a trade secret of another without express or implied
> consent by a person who . . . at the time of disclosure or use, knew or had

---

[8]     A trade secret is defined as:  "information, including a formula, pattern,
compilation, program, device, method, technique, or process," that "derives independent
economic value, actual or potential, from not being generally known to, and not being
readily ascertainable by proper means by, other persons who can obtain economic value
from its disclosure or use" and is "the subject of efforts that are reasonable under the
circumstances to maintain its secrecy."  Minn. Stat. § 325C.01, subd. 5.

> reason to know that the discloser's or user's knowledge of the trade secret
> was . . .  acquired under circumstances giving rise to a duty to maintain its
> secrecy or limit its use or derived from or through a person who owed a
> duty to the person seeking relief to maintain its secrecy or limit its use[.]

Minn. Stat. § 325C.01, subd. 3.  Additionally, "[i]n a suit for misappropriation of trade

secrets, the plaintiff must specify what information it seeks to protect." *PetroNet*, 2011

WL 1885465, at *6.

AgTrax first argues that Plaintiff did not transmit any documents or any

information orally that could constitute a trade secret, and that Plaintiff specifically

admits that no information was ever given to AgTrax that was marked as "proprietary,"

"confidential," or a "trade secret" in accordance with the parties' NDA.  (Doc. No. 109 at

24; Fiebelkorn Dep. at 34, 35, 256, 257.)  Moreover, according to Defendants, Plaintiff

has failed to specify the identity of any so-called trade secrets in a manner sufficient to

meet legal requirements that the information to be protected be specified.  *See PetroNet*,

2011 WL 1885465, at *6.  Defendant further argues that there is no evidence that any

trade secret information, if it existed, was ever given to AgTrax.  Finally, Defendant

argues that, even assuming Plaintiff had established the existence of a trade secret and

that it was disclosed to AgTrax and adequately identified by Plaintiff, the information

Plaintiff claims to be proprietary or confidential was public, and therefore cannot

constitute a trade secret.  The Court disagrees and concludes that Plaintiff has presented

sufficient evidence to establish a genuine issue of material fact with regard to the

existence and misappropriation of trade secrets as explained below.

First, the Court concludes that Plaintiff has adequately identified the information it wishes to protect, and has also established that a reasonable jury could find that the information Plaintiff does identify rises to the level of a trade secret.  Plaintiff identifies the following information related to their trax360 product as trade secrets they seek to protect:  (1) software capabilities; (2) customer information; and (3) coding features. Specifically, Plaintiff explains that these categories include the following:  software capabilities specific to trax360 such as the chemical calculator; details of selling strategies relating to barcoding labels; information developed through research based on detailed one-on-one collaboration with the EPA; and market research on the business needs of Trax360 customers or potential customers.  (Doc. No. 124 ("Pl. Brief") at 26.) Plaintiff's Lead Software Developer showed AgTrax's directors details about how trax360 works, including its platform and how the software was built.  (Fiebelkorn Aff. ¶13.)  Also, as detailed by the Court above with respect to Counts I and II, Plaintiff has sufficiently shown that it communicated this potential trade secret information when it identified as confidential or proprietary the information to be presented immediately prior to its presentation, put that information into its PowerPoint presentation, and created and signed an NDA with AgTrax.

Plaintiff also presents evidence that this type of information "derive[d] independent economic value," when kept secret, and was not necessarily "readily ascertainable by proper means."  *See* Minn. Stat. § 325C; *Benefit Res., Inc. v. Apprize Tech. Solutions*, *Inc*., Civ. No. 07-4199, 2008 WL 2080977, at *7 (D. Minn. May 15, 2008) (holding that software and code can constitute a trade secret).  Even if this

information independently fails to constitute a trade secret, the Court agrees with Plaintiff that a reasonable jury could find that trax360's "combination of elements or features" constitutes a trade secret. *Jostens, Inc. v. Nat'l Computer Sys., Inc*., 318 N.W.2d 691, 699 (Minn. 1982) (holding that a combination of generally known computer elements can constitute a trade secret where the combination of elements or features is unique or novel); *PetroNet*, 2011 WL 1885465, at *6. In this case, the combination was plausibly unique or novel because Plaintiff provides evidence that no other company created a product which included all of the same features in order to serve a similar purpose. (Fiebelkorn Dep. at 145, 268.) Plaintiff further presents evidence that AgTrax did not have the know-how or capability of creating a software solution like that of trax360 and sought to buy AgInfo after the parties' meeting as a result.

The Court also concludes that AgInfo submitted sufficient evidence that it made reasonable efforts to maintain the information's secrecy, and the information at issue is not public such that it could not constitute a trade secret. *Jostens*, 318 N.W.2d at 700 ("Even if a trade secret were not known or readily ascertainable, it might become so if its possessor disclosed it to the public."). Here, Plaintiff drafted and ensured that AgTrax signed an NDA prior to communicating about Plaintiff's products and processes. Though it is true that Plaintiff discusses its pricing with customers and certain information about its products can be found on the internet, it is also true that Plaintiff presents evidence supporting their claim that information about their calculator and the software and platforms supporting the trax360 are not disclosed without an NDA. Identifying the existence of the chemical calculator on its website is not the same as disclosing specific

details on how it operates or is designed and developed. Plaintiff also states that it requires its clients and employees to sign confidentiality agreements. Thus, Plaintiff has presented sufficient evidence to establish an issue of fact as to whether Plaintiff attempted to keep its information confidential.

As detailed above in Section II, the Court concludes that Plaintiff has presented sufficient evidence to raise questions of fact regarding whether AgTrax disclosed or used Plaintiff's claimed protectable information without consent or with knowledge that those trade secrets should be kept secret. *See* Minn. Stat. § 325C.01, subd. 3. AgTrax and AgWorks were putting out a competing product within a short period of time after AgTrax met with Plaintiff. AgWorks began its subscription based pricing model just shortly after Plaintiff revealed its version of such a model to AgTrax. (Abbate-Dattilo Aff., Ex. II; Jenkins Dep. ¶ 112.) Plaintiff also asserts that AgWorks's website has changed, stating that since the August 8 meeting between Plaintiff and AgTrax, "[AgWorks] speak[s] web based, they speak SaaS, they speak subscription." (Fiebelkorn Dep. 158.) Plaintiff testifies that those features are features that the AgTankTracker did not have in the past. (*Id.*) Plaintiff argues that these features are "extremely important" to customers, and were previously unique to Plaintiff. (*Id.*) Finally, Plaintiff asserts that AgWorks now uses Plaintiff's sales tactics, which can be sufficient to present the issue of misappropriation to a jury. *See Ultra Lube, Inc. v. Dave Peterson Monticello Ford-Mercury, Inc.*, Civ. No. 02-658, 2002 WL 31302981, at *3-5 (Minn. Ct. App. Oct. 15, 2002) (information related to a company's up-selling techniques supported a misappropriation claim). Although the evidence is admittedly thin, a reasonable jury

could find that there was misappropriation, and, therefore, this fact dispute is properly resolved by a jury and not this Court.[9]  *Id.* at *5 ("[W]hile the record is 'thin,' we believe that reasonable persons might draw different conclusions from the evidence presented, and that the evidence cited by [Plaintiff] is legally sufficient to support [Plaintiff's] claim that there are genuine issues of material fact with respect to the nature, quality and extent of [Plaintiff's] trade secrets, particularly as it relates to [Plaintiff's] up-selling techniques and the use of multiple technicians in the bays to service vehicles.").  As a result, the Court denies Defendant's motion for summary judgment as to Count V.

## VII.  Tortious Interference with Contract against AgWorks

Both AgWorks and Plaintiff seek summary judgment for Plaintiff's tortious interference claim against AgWorks only (Count VI).  A claim for tortious interference requires:  (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) the intentional procurement of the contract's breach; (4) without justification; and (5) damages.  *Kallok*, 573 N.W.2d at 362 (citation omitted).  Tortious interference with a non-compete provision is a "tort for which damages are recoverable if the non-compete agreement is deemed valid and elements of tortious interference of a contractual relationship are established."  *Ultra Lube*, 2002 WL 31302981, at *7.

Here, the parties all focus on the non-compete provision as the underlying contractual provision at issue.  Because the Court has deemed the non-compete provision

---

[9]    Though not dispositive of this issue, the Court acknowledges Plaintiff's reference to Defendants' egregious and evasive discovery actions, as well as the sanctions granted by the Magistrate Judge relating to those actions, which most certainly impacted Plaintiff's ability to present all evidence related to this issue.

unenforceable as unreasonable (*see* Section III), Plaintiff's tortious interference claim

cannot go forward.  *See id.*  Thus, AgWorks's motion is granted, Plaintiff's motion is

denied, and Count VI against AgWorks is dismissed with prejudice.

## VIII.  Unfair Competition against all Defendants

Defendants and Plaintiff all seek summary judgment on Plaintiff's unfair

competition claim.  Unfair competition is not a tort with specific elements; it describes a

general category of torts which courts recognize for the protection of commercial

interests.  *Rehab. Specialists, Inc. v. Koering*, 404 N.W.2d 301, 305-06 (Minn. Ct. App.

1987) (citations omitted).  Unfair competition can be based on tortious interference with a

contract or improper use of trade secrets.  *United Wild Rice, Inc. v. Nelson*, 313 N.W.2d

628, 632 (Minn. 1982).  However, a claim that asserts nothing more than

misappropriation or misuse of a trade secret is displaced by MUTSA.  *Schlief v.

Nu-Source, Inc.*, Civ. No. 10-4477, 2011 WL 1560672, at *6 (D. Minn. Apr. 25, 2011)

(citing *SL Montevideo Tech., Inc. v. Eaton Aerospace, LLC*, 292 F. Supp. 2d 1173,

1179-80 (D. Minn. 2003)).  Moreover, where a claim of unfair competition rests upon the

same allegations as other claims, the unfair competition claim is duplicative and must be

dismissed.  *Acist Med. Sys., Inc. v. Opsens, Inc.*, Civ. No. 11-539, 2011 WL 4640884,

at *5 (D. Minn. Oct. 4, 2011).

Here, the Court concludes that the allegations supporting this claim are duplicative

of Plaintiff's other claims and must be dismissed.  Plaintiff's attempt to characterize this

claim as relating to Defendants' *joint* activities, rather than those activities of each

independent Defendant, cannot save this claim.  The underlying allegations and activities are generally the same for all parties and for all counts.

Thus, the Court grants AgTrax's and AgWorks's motions for summary judgment and denies Plaintiff's motion.  The Court dismisses Count VII with prejudice.

## IX.    Unjust Enrichment against all Defendants

A claim for unjust enrichment requires that a party "knowingly received something of value, not being entitled to the benefit, and under circumstances that would make it unjust to permit its retention."  *Southtown Plumbing, Inc. v. Har-Ned Lumber Co., Inc.*, 493 N.W.2d 137, 140 (Minn. Ct. App. 1992).  Liability for unjust enrichment can exist where "the defendant has knowingly received or obtained something of value for which the defendant 'in equity and good conscience' should pay."  *ServiceMaster v. GAB*, 544 N.W.2d 302, 306 (Minn. 1996).  Breach of contract can indicate liability for unjust enrichment.  *Wingert & Assoc., Inc. v. Berman Leather, Inc.*, Civ. No. 07-624, 2008 WL 343036, at *2 (D. Minn. Feb. 4, 2008) (finding that the plaintiff had sufficiently plead an unjust enrichment claim based, in part, on alleged violation of non-compete agreements).

It is true, as Defendants argue, that "[e]quitable relief cannot be granted where the right[s] of the parties are governed by a valid contract."  *P.I.M.L., Inc. v. Fashion Links, LLC*, 428 F. Supp. 2d 961, 973 (D. Minn. 2006) (citation omitted).  However, it is also true that a plaintiff is permitted to submit breach of contract and unjust enrichment as alternate theories in the event that a jury finds that no express contract existed.  *Id*.  Thus,

the Court concludes that Plaintiff's claim for unjust enrichment is not barred by its breach of contract claim at this stage.

The Court also concludes that, consistent with its analysis above relating to Counts I, II, and V, Plaintiff has presented sufficient evidence to create a genuine issue of material fact regarding whether Defendants received Plaintiff's valuable confidential or proprietary information, and then derived value from that information in the form of business that they would not have otherwise been able to obtain without that information. Thus, Defendants' motions as to the unjust enrichment claim are denied.

## X.    Damages

AgTrax argues that all counts should be dismissed because Plaintiff cannot show that any recoverable damages exist based on either a "lost profits" theory or an "unjust enrichment theory."

"[D]amages for breach of contract must be proved to a reasonable certainty, and a party cannot recover speculative, remote, or conjectural damages." *Children's Broad. Corp. v. Walt Disney Co.*, 357 F.3d 860, 865 (8th Cir. 2004) (internal quotation marks omitted). "[O]nce the fact of loss has been shown, the difficulty of proving its amount will not preclude recovery so long as there is proof of a reasonable basis upon which to approximate the amount." *Id.* (internal quotation marks omitted). Generally, damages for breach of contract are the amount that would place the non-breaching party in the position it would have occupied but-for the breach. *See Hartford Fire Ins. Co. v. Pearson Mech. Servs., Inc.*, Civ. No. 10-2818, 2011 WL 3793972, at *3 n.26 (D. Minn. Aug. 25, 2011) (citing *Logan v. Norwest Bank Minn., N.A.*, 603 N.W.2d 659, 663 (Minn.

Ct. App. 1999)).  In Minnesota, "the invasion of a legal right imports a damage . . . .

Absent proof of actual loss[,] nominal damages are recoverable for breach of contractual

obligation."  *Fiebelkorn v. IKON Office Solutions, Inc.*, 668 F. Supp. 2d 1178, 1193

(D. Minn. 2009) (citing *Geo. Benz & Sons v. Hassie*, 293 N.W. 133, 137-38 (1940)).

The Court concludes that Plaintiff has shown at the very least that it could be

entitled to nominal damages should it prevail on its breach of contract claim.  Plaintiff

has further shown evidence supporting lost profits for its claimed losses through

Fiebelkorn's testimony and its expert.  Plaintiff's claims are therefore not precluded by a

lack of damages.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.    Defendants AgWorks, Inc. and AgWorks, LLC's Motion for Summary

Judgment (Doc. No. [100]) is **GRANTED IN PART AND DENIED IN PART** as

follows:

a.    The Motion is **GRANTED** with respect to Counts VI

and VII, and those counts are **DISMISSED WITH PREJUDICE**.

b.    The Motion is **DENIED** with respect to Count VIII.

2.    Defendants Integrated Solutions Group, Inc. and AgTrax Technologies'

Motion for Summary Judgment (Doc. No. [107]) is **GRANTED IN PART AND**

**DENIED IN PART** as follows:

a.      The Motion is **GRANTED** with respect to Counts III, IV,

and VII, and those counts are **DISMISSED WITH PREJUDICE**.

b.      The Motion is **DENIED** with respect to Counts I, II, V,

and VIII.

3.      Plaintiff AgInformationData, LLC's Motion for Partial Summary Judgment

(Doc. No. [122]) is **DENIED.**

Dated:  September 8, 2014                  s/Donovan W. Frank
                                           DONOVAN W. FRANK
                                           United States District Judge